UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

FRANCIS D. HELMER,

                              Plaintiffs,

                                                    6:23-cv-00323
                                                    (LEK/TWD)

v.

TIMOTHY SEYMOUR, TIFFANY DOE, and
LISA BURDICK,

                              Defendants.

───────────────────────────────

APPEARANCES:                                    OF COUNSEL:

FRANCIS D. HELMER,
4399 Leecenter Taberg Rd.
Taberg, NY 13471
Plaintiff, pro se

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk has sent to the Court for review a complaint brought pursuant to 42 U.S.C. §

1983, filed by Francis D. Helmer ("Plaintiff").  (Dkt. No. 1.)  Plaintiff has not paid the filing fee

for the action and seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt. No. 2.)

## I.      IFP APPLICATION

The Court may grant IFP status if a party "is unable to pay" the standard fee for

commencing an action.  28 U.S.C. § 1915(a)(1).  Upon review, Plaintiff has submitted a

completed and signed IFP application, which demonstrates economic need.  (Dkt. No. 2.)

Accordingly, the Court grants his application for leave to proceed IFP.[1]

## II.    INITIAL REVIEW

### A.    Legal Standard

When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the

court determines that. . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on

which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, even if a plaintiff satisfies the financial

criteria to commence an action IFP, it is the Court's responsibility to determine whether the

plaintiff may properly maintain the complaint that he or she filed in this District.  *See id.*

In reviewing a pro se litigant's complaint, the court has a duty to liberally construe the

pleadings, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should

exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the

adverse party has been served and both parties (but particularly the plaintiff) have had an

opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in

original).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[1]  Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B.      Summary of the Complaint

The complaint, dated March 13, 2023, names the following individuals as Defendants: Timothy Seymour, Commissioner of DSS; PINS Worker Tiffany Doe; and Lisa Burdick, Supervisor (CPS). (Dkt. No. 1 at ¶ 3.) Plaintiff alleges Lisa Burdick "was told months ago to call [Plaintiff] to "let [him] know about his 14 year old son." *Id.* at ¶ 4. However, Lisa Burdick "refused to do her job." *Id.* On March 7, 2023, Plaintiff tried to talk to Tiffany about visitation with his son, "which is ordered by the court's [sic]" but she "refused" to follow [the] court's orders. *Id.* Timothy Seymour, is also "refusing" Plaintiff's "court ordered visitation[.]" *Id.* "This has been going for years." *Id.* The County of Herkimer is "corrupt" and "all three Defendants are also allowing [Plaintiff's] son to visit a child molester which is another court order violation." *Id.* Plaintiff alleges Defendants are a danger to his son and "all kids." *Id.*

Plaintiff lists his first cause of action as follows: "For each Defendant to pay $4 million each.  Defendant Tiffany (PINS) Worker to pay $4 million, Lisa Burdick to pay $4 million, and Timothy Seymour to pay $4 million."  *Id.* at ¶ 5.  As to the second cause of action, Plaintiff states, "For each defendant to be removed from there [sic] job and lose all pay."  *Id.*  The third cause of action states "And for each Defendant to be finded [sic]."  *Id.*  In his prayer for relief, Plaintiff requests that "all three cause [sic] of action" be "granted."  *Id.* at ¶ 6.  In the Civil Cover Sheet, Plaintiff refers to a "violation of civil rights" and "violation of court orders and putting my son in danger."  (Dkt. No. 1-1.)

    **C.**    **Analysis**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action "for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights [but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To state a valid claim pursuant to § 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'"  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); *accord Byng v. Delta Recovery Servs. LLC*, 568 F. App'x 65, 65-66 (2d Cir. 2014).  Having carefully reviewed Plaintiff's complaint, the Court recommends that it be dismissed in its entirety.

Plaintiff has not provided "a short and plain statement of the claim showing that [he] is entitled to relief" nor has he established this Court's jurisdiction.  *See* Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(h)(3) (court may raise basis of its jurisdiction sua sponte).  When subject

matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The complaint fails to provide specific facts relevant to the claims, or to relate them to federal causes of action. Plaintiff's so-called "causes of action" fail to give Defendants "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2). Because Plaintiff failed to plausibly allege that one of the Defendants violated one or more of his federal rights the Court recommends dismissing the complaint for failure to state a claim upon which relief may be granted.[2]

Generally, when the Court dismisses a pro se complaint sua sponte, the plaintiff should be afforded the opportunity to amend at least once; however, leave to replead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "[L]ack of subject matter jurisdiction is a substantive defect that cannot be cured by better pleading." *Moran v. Proskauer Rose LLP*, No. 1:17-cv-00423 (MAD/TWD), 2017 WL

---

[2] Due to the nature of Plaintiff's complaint, it is difficult to precisely determine exactly which doctrine applies, but his claims, if any, are also likely barred. To that end, "the *Rooker-Feldman* doctrine bars a district court from reviewing a family court's determinations regarding custody, neglect and visitation where those issues have been decided after providing the plaintiff a full and fair opportunity to litigate those issues." *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F. Supp. 2d 146, 152 (E.D.N.Y. 2002) (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002)). "Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). In the event that Plaintiff's underlying custody state court proceeding remains pending, this Court's involvement may also implicate the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

3172999, at *3 (N.D.N.Y. July 26, 2017).  In light of Plaintiff's pro se status, the Court

recommends that prior to outright dismissal of this action, leave to amend be granted.[3]

      **WHEREFORE**, for the reasons stated herein, it is hereby

      **ORDERED** that Plaintiff's IFP application is (Dkt. No. 2) is **GRANTED**; and it is

further

      **RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH**

**LEAVE TO AMEND**; and it is further

      **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance

with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written

objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[3]  Should Plaintiff be granted leave to amend, any amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and Local Rule 10.1.  Any amended complaint must be a complete pleading which will supersede and replace the original complaint in its entirety.  Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.  "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).

[4]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**


Dated:  May 1, 2023
           Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

Moran v. Proskauer Rose LLP, Not Reported in Fed. Supp. (2017)

2017 WL 3172999

2017 WL 3172999
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas J. MORAN, Plaintiff,

v.

PROSKAUER ROSE LLP; Jerold D. Jacobson;
and Keisha Ann Grace Gray, Defendants.

1:17-cv-00423 (MAD/TWD)
|
Signed 07/26/2017

**Attorneys and Law Firms**

APPEARANCES: THOMAS J. MORAN, 500 16th St., Apt.
203, Watervliet, New York 12189, Plaintiff, pro se.

### ORDER

Mae A. D'Agostino, U.S. District Judge

**\*1** Plaintiff commenced this action *pro se* on April 17,
2017 against Proskauer Rose LLP ("Proskauer Rose"),
Jerold D. Jacobson ("Defendant Jacobson"), and Keisha
Ann Grace Gray ("Defendant Gray"). *See* Dkt. No. 1. In
an Order and Report-Recommendation dated May 1, 2017,
Magistrate Judge Dancks granted Plaintiff's application to
proceed *in forma pauperis* for filing purposes only and
denied Plaintiff's motion for appointment of counsel. *See*
Dkt. No. 6 at 2, 9. In reviewing the sufficiency of the
complaint, Magistrate Judge Dancks concluded that the Court
lacks subject matter jurisdiction over Plaintiff's claims, and
therefore, despite Plaintiff's *pro se* status, recommended that
Plaintiff's complaint be dismissed with prejudice. *See id.* at
9. On May 26, 2017, Plaintiff filed objections to Magistrate
Judge Dancks's Order and Report-Recommendation. *See* Dkt.
No. 7.

According to the complaint, Proskauer Rose is a global law
firm and Defendants Jacobson and Gray are attorneys with
Proskauer Rose. *See* Dkt. No. 1 at 5. Plaintiff asserts that
Proskauer Rose is counsel for non-party Jewish Board of
Family and Children's Services ("JBFCS"), Plaintiff's former
employer. *See id.* at 5-6. As Magistrate Judge Dancks noted,
according to publicly available documents, Plaintiff filed a
complaint with the New York State Division of Human Rights
("NYSDHR") against JBFCS. *See* Dkt. No. 6 at 4.

Plaintiff alleges that Defendants Jacobson and Gray appeared
at a conference before the NYSDHR on behalf of JBFCS.
*See* Dkt. No. 1 at 5-6. Plaintiff alleges that, at the time of
this conference, Defendants Jacobson and Gray were not
appropriately licensed to practice law in New York State
through the New York State Unified Court System. *See id.*
Plaintiff alleges that he told two of NYSDHR's employees
that "allowing two attorneys with no valid law licenses into
this conference to practice law is fraudulent." *Id.* at 6.

Moreover, Plaintiff alleges that Defendant Jacobson wrote
a "fraudulent" email response to Plaintiff's NYSDHR
complaint since Defendant Jacobson's "law license [was]
expired at the time the [r]esponse was sent." *Id.* Plaintiff
also argues that, because of Defendant Jacobson's personal
relationship with the JBFCS, it is inappropriate for him
"to handle the issues of the Jewish Board." *Id.* at 7.
Furthermore, Plaintiff claims that Defendant Gray "tricked
[Maria] Di Cosimo of Lexis-Nexis into providing Ms.
Gray with information that was obtained through Ms. Di
Cosimo's connection with Lexis-Nexis fraudulently." *Id.*
Plaintiff requests $240 million in total from Defendants and
an injunction preventing Defendant Proskauer Rose from
"continuing its practice of allowing attorneys with no law
licenses to practice law in the State of New York as well as
the United States." *Id.* at 8.

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has opined that the court is obligated
to "make reasonable allowances to protect *pro se* litigants"
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710
F.2d 90, 95 (2d Cir. 1983)). However, "[t]he right of self-
representation does not exempt a party from compliance with
the relevant rules of procedural and substantive law." *Massie
v. Ikon Office Solutions, Inc.*, 381 F. Supp. 2d 91, 94 (N.D.N.Y.
2005) (quoting *Clarke v. Bank of New York*, 687 F. Supp. 863,
871 (S.D.N.Y. 1988)).

**\*2** In reviewing a report and recommendation, a district
court "may accept, reject, or modify, in whole or in part,
the findings or recommendations made by the magistrate
judge." 28 U.S.C. § 636(b)(1)(C). When a party makes
specific objections to a magistrate judge's report, the district

Case 6:23-cv-00323-LEK-TWD    Document 6    Filed 05/01/23    Page 9 of 21

Moran v. Proskauer Rose LLP, Not Reported in Fed. Supp. (2017)

2017 WL 3172999

court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004). As mentioned, Plaintiff has submitted objections to the Order and Report-Recommendation. *See* Dkt. No. 7.

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005). Federal jurisdiction is available only when a "federal question" is presented or when the plaintiff and the defendant are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. When a court lacks subject matter jurisdiction, dismissal of the complaint is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

In order to invoke "federal question" jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, as Magistrate Judge Dancks concluded, Plaintiff has failed to allege a claim that arises under the Constitution or laws of the United States of America. Plaintiff's main allegation surrounds the state bar licensure of two private attorneys employed by a private limited liability partnership. *See* Dkt. No. 1 at 5. There is no federal claim that can be inferred from the facts alleged.

Plaintiff has submitted his allegations on a form that is provided by the Court for *pro se* litigants to file civil rights complaints pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See id.* at 1. However, there is no indication from Plaintiff's allegations that a Section 1983 claim could be supported. In his objections, Plaintiff agreed with Magistrate Judge Dancks that the reason he used a civil rights complaint form was because it was provided to him by the Court. *See* Dkt. No. 7 at 4.

To state a Section 1983 claim, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640

(1980)). Moreover, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)). The conduct of a private actor may be considered state action when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

**\*3** Defendants Jacobson and Gray are private attorneys working for a private law firm. *See* Dkt. No. 1 at 5. Plaintiff does not allege that Defendants had any affiliation with the State of New York beyond their licensure, and therefore, they cannot be deemed "state actors" under Section 1983. *See Licari v. Voog*, 374 Fed. Appx. 230, 231 (2d Cir. 2010) ("[P]rivate attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims.") (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)). Furthermore, Proskauer Rose's registration as a domestic limited liability partnership with the State of New York does not render it a "state actor." [1] *See Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003) (citing *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543-44 (1987)). Plaintiff has also failed to allege that Defendants conspired with any state actor to violate his constitutional rights. Accordingly, Plaintiff has failed to allege a cause of action that provides this Court with subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiff's objections offer nothing to cure this defect.

[1]     As Magistrate Judge Dancks noted, Proskauer Rose is listed as a domestic registered limited liability partnership with the New York State Division of Corporations. *See* Dkt. No. 6 at 8 n.4.

As Magistrate Judge Dancks also found, Plaintiff has failed to establish a basis for diversity jurisdiction under 28 U.S.C. § 1332. *See* Dkt. No. 6 at 8. Diversity jurisdiction is only proper where "all of the adverse parties in a suit [are] completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)). For the purposes of diversity jurisdiction, the citizenship of limited liability partnerships, like Proskauer Rose, is determined by the citizenship of all of its members.

Case 6:23-cv-00323-LEK-TWD  Document 6  Filed 05/01/23  Page 10 of 21

Moran v. Proskauer Rose LLP, Not Reported in Fed. Supp. (2017)

2017 WL 3172999

*See Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000).

Here, the complaint states that Plaintiff lives in Watervliet, New York, and that Defendants Jacobson and Gray are also citizens of New York. *See* Dkt. No. 1 at 1-2, 5. Proskauer Rose's citizenship is determined by the citizenship of each of its members, including Defendants Jacobson and Gray. [2] *See id.* As such, all parties are citizens of New York, and this Court lacks diversity jurisdiction over Plaintiff's claims. Accordingly, Plaintiff's complaint is dismissed.

[2]     Defendants Jacobson and Gray are listed as partners on the Proskauer Rose website. *Professionals*, Proskauer Rose, http://www.proskauer.com/professionals/ (last visited July 13, 2017).

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted). As Magistrate Judge Dancks found, lack of subject matter jurisdiction is a substantive defect that cannot be cured by better pleading. *See*

Dkt. No. 6 at 9; *see also Planck v. Schenectady Cty.*, No. 1:12-CV-0336, 2012 WL 1977972, *6 (N.D.N.Y. June 1, 2012). As such, Plaintiff's complaint is dismissed with prejudice. [3]

[3]     Since the Court is dismissing Plaintiff's complaint with prejudice, the Court will not address Plaintiff's objection to Magistrate Judge Dancks's denial of Plaintiff's motion for appointment of counsel.

**\*4**  Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks's Order and Report-Recommendation (Dkt. No. 6) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED in its entirety without leave to amend**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3172999

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,

v.

Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)
|
Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774,
Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** Francesca Amato ("Plaintiff" or "Amato"), proceeding
*pro se*, filed an action against Ulster County Family Court
Judge Anthony McGinty ("Defendant" or "Judge McGinty").
(Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-
cv-1280 (GLS/TWD). (Dkt. No. 5.[1]) Plaintiff has not paid
the filing fee, but instead seeks leave to proceed *in forma
pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed
below, the Court grants Plaintiff's fourth IFP application (Dkt.
No. 16) and recommends dismissal of the amended complaint
(Dkt. No. 6) in its entirety.

[1]    Amato was terminated as party plaintiff in the
related action by Order entered August 7, 2019. *See
Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF
Dkt. No. 73. The Court assumes familiarity with
the related case.

**I. BACKGROUND**
Plaintiff initiated this action and moved to proceed IFP
on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial
pleading was not signed and Plaintiff was directed to submit
a signed copy of the complaint. (Dkt. No. 5.) On August 13,
2021, Plaintiff submitted a signed copy of the complaint, but
also attached five exhibits that were not submitted with the

original pleading. (Dkt. No. 6.) As such, the signed pleading
was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17,
2021, and December 17, 2021, this Court denied Plaintiff's
motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December
17, 2021, Order, Plaintiff was afforded one final opportunity
to submit a fully completed IFP application or pay the entire
filing fee by January 6, 2022. (Dkt. No. 14.) Despite the
foregoing directive, Plaintiff's fourth IFP application was not
filed until January 10, 2022. (Dkt. No. 16.)

**II. IFP APPLICATION**
Plaintiff declares in her fourth IFP application that she is
unable to pay the filing fee. (Dkt. No. 16.) After reviewing the
submission, the Court finds Plaintiff meets the requirement
for economic need and thus her IFP application is granted.

**III. SUFFICIENCY OF THE AMENDED
COMPLAINT**

  **A. Legal Standard**
28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to
proceed *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that – ... (B) the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B).

To determine whether an action is frivolous, a court must
look to see whether the complaint "lacks an arguable basis
either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,
325 (1989). To survive dismissal for failure to state a claim,
a complaint must plead enough facts to state a claim that
is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009). While Rule 8(a) of the Federal Rules of Civil
Procedure, which sets forth the general rules of pleading,
"does not require detailed factual allegations, ... it demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation." *Id.*

  **\*2** In determining whether a complaint states a claim upon
which relief may be granted, "the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

**B. Summary of the Amended Complaint**

Plaintiff brings this action against Defendant in both his "judicial" and "individual" capacity. (Dkt. No. 6 at 1. [2]) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')—hereby makes these allegations against Defendant herein as follows[.]").

[2]       Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Her disabilities are listed as "ptsd" and "LAS", which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal Protection Clauses of the Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

> **\*3** I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic

violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentiality program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.*[3]

[3] Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

Plaintiff explains that "anytime I enter the Family Court it will be the three of them[4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable

injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

[4] Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy Ingram, and Attorney Andrew Gilday (for his role as assigned counsel to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

**\*4** Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father who barely had visits of 8 hours a month and abandoned the child in California after

he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15. [5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

[5]     However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16.

He also denied C.A.B. his "full service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

**\*5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" when C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.* [6]

6      Plaintiff also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

### C. Discussion

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **\*6**    (b)  Paragraphs;  Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain numerous sentences, and/or contain multiple paragraphs, and/ or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

### 1. Minor Plaintiff

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at *4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/ TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot

bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at *4 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

**\*7** Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

### 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity. [7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at *4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at *4. The same result is required here.

[7]   Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v.*

*Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

**\*8** As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff

during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law")).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Here, Plaintiff claims in conclusory fashion that Judge McGinty "discriminates" against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous.[8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at *9 (N.D.N.Y. Aug. 11, 2021) ("As a general rule, the proper defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.") (citation omitted).

[8]   Moreover, "[i]t is axiomatic that 'Title VII does not impose liability on individuals.'" *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to

liability under Title VII.") (quotation marks and citation omitted).

**\*9** Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

### 4. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. See Garcia v. SUNY Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); see also Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); Myers v. N.Y.-Dep't of Motor Vehicles, No. 06-CV-4583, 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); Netti v. Ayers, No. 17-CV-976, 2017 WL 7542494, at *18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed. [9]

9      The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. See Orr v. McGinty, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing Brooks v. Onondaga Cty. Dep't of Children & Family Servs., 5:17-CV-1186, 2018 WL 2108282, at *4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity, [10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. See Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as pro se for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

10     As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." Orr v. McGinty, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing Santiago v. Garcia, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); but see Shollenberger v. N.Y. State Unified Court Sys., 18 CV 9736, 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (allowing ADA claims

seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

**\*10** In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman* [11] Doctrine, and *Younger* [12] Abstention

[11]   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923).

[12]   *Younger v. Harris*, 401 U.S. 37 (1971).

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal

courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g., Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at \*8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017).

### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at \*3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, 2014 WL 5823116, at \*3 (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

**\*11**  The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

### c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g.*, *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive

such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

**\*12** Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g., Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11. [13] As such, the Court recommends this claim be dismissed without prejudice and with leave to amend. [14]

[13]     At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

[14]     If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057, 2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

### V. PLAINTIFF'S ADDRESS

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14. [15]) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]     While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

**VI. CONCLUSION**
**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**; [16] and it is further

[16]     Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

**\*13  RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT**

**PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[17]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2022 WL 226798

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.